In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3408

Lawrence Head,

Plaintiff-Appellant,

v.

Chicago School Reform Board
of Trustees,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 3943--David H. Coar, Judge.

Argued March 30, 2000--Decided August 25, 2000

Before Bauer, Diane P. Wood, and Williams, Circuit
Judges.

Williams, Circuit Judge.  Before the start of the
1994-95 school year Lawrence Head accepted a
four-year contract to serve as the principal of
Chicago's Nathaniel Pope Elementary School. After
the 1996-97 school year, however, the Chicago
School Reform Board of Trustees removed Head from
his position and assigned him to administrative
duties in the Department of Schools and Regions.
Believing that the School Reform Board of
Trustees had violated his due process rights and
had breached its contract with him, Head filed
suit against the School Reform Board of Trustees.
The district court rejected Head's claims and
Head now appeals. For the reasons stated below,
we affirm in part and reverse in part.
I

In March of 1994, the Chicago Board of
Education,/1 acting through the Local School
Council, hired Head as the principal for
Nathaniel Pope Elementary School ("Pope
Elementary") and gave him a four-year contract
ending June 30, 1998. By its own terms, the
contract could be terminated only on certain
limited grounds./2 Similarly, under the Illinois
School Code, Head could be discharged during the
term of his contract only for cause following an
extensive and detailed notice and hearing

process. 105 Ill. Comp. Stat. 5/34-85.

Beginning in 1995, the Board, aided by newly enacted state laws granting it greater powers, 1995 Ill. Laws 89-15, sec. 5, began to step up its efforts to remedy deficient performance in Chicago's public schools. Pursuant to these efforts, in October 1996, Pope Elementary was identified as a poorly performing school and was placed on probation. A school on probation is subject to greater Board oversight and must take certain steps to improve performance. 105 Ill. Comp. Stat. 5/34-8.3. In particular, Head, as Pope Elementary's principal, had primary responsibility for implementing a Corrective Action Plan to raise student test scores.

During the 1996-97 school year, the Board came to the conclusion that Head was not fulfilling his responsibility in this regard. Therefore, in early June of 1997, Hazel Stewart, the Education Officer for the region encompassing Pope Elementary, advised Head that the Board would seek to remove him as Pope Elementary's principal at the end of that school year. A letter signed by Chicago Public Schools CEO Paul Vallas and dated July 2, notified Head that pursuant to 105 Ill. Comp. Stat. 5/34-8.3(d), which governs schools under probation, a principal removal hearing would be scheduled for Pope Elementary. Head received a second letter signed by Vallas, dated July 3, scheduling the removal hearing for July 14 and detailing the criteria the Board used in deciding to seek his removal./3 A separate letter also notified the school community of the principal removal hearing.

Margaret Fitzpatrick presided over the July 14 hearing. During the hearing, eight witnesses presented evidence supporting Head's removal while seven witnesses testified on Head's behalf. After the hearing, Head, through his attorney, submitted a brief arguing against his removal. About a week after the hearing, Fitzpatrick issued a written decision recommending that Head be removed as principal of Pope Elementary. That same week, a Chicago Public Schools official, Phillip Hansen, criticized Head's performance on a cable access program. Then, on July 28, the Board adopted Fitzpatrick's recommendation and removed Head as principal of Pope Elementary.

Following the Board's decision, Head was assigned to work in the Department of Schools and Regions, and from there, he obtained an assignment as a hearing officer. Head's employment with the Board ended in August of 1998, 60 days after the expiration of his contract. Throughout this period, Head continued to receive the same pay and benefits he had

received as the principal of Pope Elementary, though Head claims that he lost a salary increase he would have received had he remained principal.

Eventually, Head filed suit against the Board based on the Board's actions in removing him as principal of Pope Elementary. He raised essentially four claims: (1) that, without due process, the Board had deprived him of a liberty interest in pursuing his occupation; (2) that, without due process, the Board had deprived him of a property interest in employment beyond the term of his contract; (3) that, without due process, the Board had deprived him of a property interest in employment through the end of his contract; and (4) that the Board had breached its contract with him. On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the district court rejected the first two of these claims, but allowed the last two claims to go forward./4 Later, however, on a motion for summary judgment, the district court rejected Head's remaining claims and entered judgment in the Board's favor. Head appeals the district court's decisions on all four of his claims.

II

Before we come to the merits of Head's appeal, we must address a jurisdictional issue raised by the Board. The Board argues that we lack appellate jurisdiction to consider Head's challenge to the district court's decision to dismiss, under Fed. R. Civ. P. 12(b)(6), two of his claims. The Board claims that the district court dismissed the two claims without prejudice,/5 and therefore, the dismissal does not qualify as an appealable "final decision" under 28 U.S.C. sec. 1291.

While it is true that the district court's ruling on the Board's motion to dismiss is not a final decision (not only because it was without prejudice, but also because it did not dispose of all of Head's claims, see LeBlang Motors, Ltd. v. Subaru of Am., Inc., 148 F.3d 680, 687 (7th Cir. 1998) (discussing finality of dismissals without prejudice); United States v. Ettrick Wood Prods., Inc., 916 F.2d 1211, 1216-17 (7th Cir. 1990) (discussing finality of decisions disposing of fewer than all claims against all parties)), non-final decisions become appealable after a final decision is entered. Badger Pharm., Inc. v. Colgate-Palmolive Co., 1 F.3d 621, 626 (7th Cir. 1993) (an appeal from a final decision brings up for review all previous orders entered in the case); Bastian v. Petren Resources Corp., 892 F.2d 680, 682-83 (7th Cir. 1990) (same). And, the district court's ruling on the Board's summary

judgment motion is a final decision, as it resolved all outstanding claims and made clear that Head's suit was at an end. See Otis v. City of Chicago, 29 F.3d 1159, 1163-66 (7th Cir. 1994) (en banc). Moreover, the district court entered a formal Fed. R. Civ. P. 58 judgment, which removes any doubt as to whether any portion of Head's suit remained active. See Kolman v. Shalala, 39 F.3d 173, 177 (7th Cir. 1994). Accordingly, this court has jurisdiction to consider all of Head's claims on appeal.

III
A. Claims Resolved in Motion to Dismiss Decision

We consider first the two claims the district court dismissed under Rule 12(b)(6)--that, without due process, the Board deprived Head of a liberty interest in pursuing the occupation of his choice and that, without due process, the Board deprived Head of a property interest in employment beyond the term of his contract. We review such dismissals de novo, taking a plaintiff's factual allegations as true and drawing all reasonable inferences in his or her favor. Strasburger v. Board of Educ., Hardin County Community Unit Sch. Dist. No. 1, 143 F.3d 351, 359 (7th Cir. 1998). A claim should be dismissed under Rule 12(b)(6) only if "no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" Nance v. Vieregge, 147 F.3d 589, 590 (7th Cir. 1998) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

1. Liberty Interest Claim
In setting out the basis for his due process liberty interest claim in his complaint,/6 Head alleged that the Board (or at least certain persons associated with the Board) deprived him of a liberty interest in pursuing the occupation of his choice by disseminating false allegations regarding his performance as Pope Elementary's principal./7 In ruling that Head's allegations failed to state a claim, the district court concluded that Head had not adequately alleged that the Board deprived him of a liberty interest in pursuing his occupation. We agree, although for a reason slightly different than that given by the district court.

A claim that a government employer has infringed an employee's liberty to pursue the occupation of his or her choice requires that (1) the employee be stigmatized by the employer's actions; (2) the stigmatizing information be publicly disclosed; and (3) the employee suffer a tangible loss of other employment opportunities as a result of the public disclosure. Strasburger, 143 F.3d at 356; Harris v. City of

Auburn, 27 F.3d 1284, 1286 (7th Cir. 1994). However, simply labeling an employee as being incompetent or otherwise unable to meet an employer's expectations does not infringe the employee's liberty. Lashbrook v. Oerkfitz, 65 F.3d 1339, 1348-49 (7th Cir. 1995). The employee's good name, reputation, honor, or integrity must be called into question in such a way as to make it virtually impossible for the employee to find new employment in his chosen field. Olivieri v. Rodriguez, 122 F.3d 406, 408 (7th Cir. 1997); Lashbrook, 65 F.3d at 1348-49; Colaizzi v. Walker, 812 F.2d 304, 307 (7th Cir. 1987).

The district court based its dismissal of Head's due process liberty interest claim on a determination that Head had not pleaded sufficient facts to establish the legal elements of his claim. To survive a motion to dismiss, however, Head was not required to plead with such particularity. See Veazey v. Communications & Cable of Chicago, Inc., 194 F.3d 850, 853-54 (7th Cir. 1999); Bennett v. Schmidt, 153 F.3d 516, 518-19 (7th Cir. 1998). The allegations in Head's complaint, although conclusory and somewhat incomplete, are adequate to put a reader on notice as to the gravamen of Head's due process liberty interest claim. As such, the allegations are sufficiently particular to survive a motion to dismiss. See Scott v. City of Chicago, 195 F.3d 950, 951-52 (7th Cir. 1999); Bennett, 153 F.3d at 518-19.

The problem for Head is not insufficient particularity, but rather too much particularity. He alleged in his complaint that the Board's published allegations "constitute charges of ineptitude and professional inadequacies." If this is true, as we must assume it to be, Head has pleaded himself out of court by including allegations that establish his inability to state a claim for relief. See Bennett, 153 F.3d at 519; Thomas v. Farley, 31 F.3d 557, 558-59 (7th Cir. 1994). Simple charges of professional incompetence do not impose the sort of stigma that actually infringes an employee's liberty to pursue an occupation. Lashbrook, 65 F.3d at 1348-49; Munson v. Friske, 754 F.2d 683, 693-94 (7th Cir. 1985). Only if the circumstances of an employee's discharge so sully the employee's reputation or character that the employee will essentially be blacklisted in his or her chosen profession will it be possible to pursue a due process liberty interest claim. Lashbrook, 65 F.3d at 1348-49 (listing charges of immorality, dishonesty, alcoholism, disloyalty, Communism, or subversive acts as the sort of charges that infringe an employee's liberty); Ratliff v. City of Milwaukee, 795 F.2d 612, 625-26 (7th Cir.

1986) (concluding that charges of untruthfulness, neglect of duty, and insubordination against a police officer impose sufficient stigma); see also Olivieri, 122 F.3d at 408; Colaizzi, 812 F.2d at 307. As Head's allegations of stigma fall short of this threshold, he has failed to state a due process liberty interest claim.

2. Property Interest Claim

Head claims that a requirement, found both in his contract and in a 1996 Board publication, that he be given notice five months before the end of the contract term regarding whether his contract would be renewed, grants him a property interest in employment beyond the term of his contract, which the Board could not deprive him of without due process. After reviewing Head's entire contract (which Head attached to his complaint), the district court concluded that Head had no property interest in future employment with the Board and therefore could not state a due process claim. We agree.

Property interests are enforceable entitlements to a benefit or right. Board of Regents v. Roth, 408 U.S. 564, 577 (1972); Lashbrook, 65 F.3d at 1345; Swick v. City of Chicago, 11 F.3d 85, 86 (7th Cir. 1993). They can arise directly from state or federal law (as with a statute granting a benefit) or indirectly through the operation of state or federal law on certain conduct (as with a contract). Lashbrook, 65 F.3d at 1345; Swick, 11 F.3d at 86. A mere opportunity to acquire property, however, does not itself qualify as a property interest protected by the Constitution. Kyle v. Morton High Sch., 144 F.3d 448, 452 (7th Cir. 1998) (per curiam); Cornelius v. LaCroix, 838 F.2d 207, 210-12 (7th Cir. 1988).

Head's contract with the Board makes it plain that Head has no enforceable entitlement to employment beyond the term of the contract. It provides, "This Agreement, including and not withstanding the procedures set forth herein, shall expire at the end of its stated term and shall not grant or create any contractual rights or other expectancy of continued employment beyond the term of this Agreement." This provision conclusively dispels any confusion regarding the possibility of a property interest in future employment created by the requirement that Head be given five months notice of whether his contract would be renewed. And, there is nothing in the Illinois School Code that overrides (or is even inconsistent with) this aspect of the contract. Cf. Lyznicki v. Board of Educ., Sch. Dist. 167, Cook County, Ill., 707 F.2d 949, 951-52 (7th Cir. 1983) (considering a similar claim by a principal based on the

Illinois School Code). Accordingly, the district court properly dismissed Head's claim that the Board unconstitutionally deprived him of a protected property interest in employment beyond the term of his contract.

B. Claims Resolved in Summary Judgment Decision

We turn next to the two claims on which the district court granted summary judgment--that, without due process, the Board deprived Head of a property interest in remaining the principal of Pope Elementary through the end of his contractual term of employment, and that the Board breached its contract with him. This court reviews a district court's grant of summary judgment de novo, construing the evidence and the inferences drawn from it in the light most favorable to the non-moving party. Curran v. Kwon, 153 F.3d 481, 485 (7th Cir. 1998). Summary judgment is appropriate where there is no genuine issue of material fact such that judgment is proper as a matter of law. Id. (citing Fed. R. Civ. P. 56(c)).

1. Due Process Claim

In support of his remaining due process claim, Head contends that by removing him from his position as principal of Pope Elementary before the end of his contract, the Board deprived him of a property interest in continuing in that position for the term of his contract. There can be no doubt that, as a public employee who by contract and statute could be removed only on limited grounds, Head had a property interest in completing his contract in accordance with the terms of his contract, one of which specifically made him principal of Pope Elementary. Jones v. City of Gary, Ind., 57 F.3d 1435, 1440-41 (7th Cir. 1995); Vail v. Board of Educ., 706 F.2d 1435, 1437-38 (7th Cir.), aff'd by an equally divided Court, 464 U.S. 813 (1983). The question the Board raises, which the district court never adequately addressed, is whether the deprivation Head suffered is more than de minimis, as it must be to be actionable. Swick v. City of Chicago, supra, 11 F.3d at 87-88; see also Dill v. City of Edmond, Okla., 155 F.3d 1193, 1206-07 (10th Cir. 1998) (collecting cases).

The Board suggests that because Head received the same salary and benefits after his removal that he did when he was principal, he, at most, suffered a de minimis deprivation of property. The Board's suggestion is flawed, however. To begin with, the relevant question is whether Head received all the salary and benefits he would have received if he had remained Pope

Elementary's principal. Head opposed the Board's summary judgment motion on the ground that he did not receive all he would have been due. If he is right, he suffered an injury that is plainly more than de minimis. See Swick, 11 F.3d at 86-88 (pecuniary losses qualify as actionable deprivations of property). Moreover, even if Head did receive all he would have been due had he remained Pope Elementary's principal, he might still have had a constitutionally protected property interest in remaining in that position. We have recognized that a loss of position that impedes future job opportunities or has other indirect effects on future income can inflict an actionable deprivation of property. Swick, 11 F.3d at 86. We need not definitively answer whether Head has adequately established that he possessed a protected property interest in remaining Pope Elementary's principal through the end of his contract, however, since we agree with the district court that Head's challenges to the adequacy of the procedures afforded him prior to his removal are without merit.

A public employer who removes an employee from a job in which the employee has a constitutionally protected interest must provide certain limited pre-termination procedures,/8 including, at a minimum: (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to tell his or her side of the story. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985); Staples v. City of Milwaukee, 142 F.3d 383, 385 (7th Cir. 1998). Also, the chosen decisionmaker must be impartial. Bakalis v. Golembeski, 35 F.3d 318, 323-26 (7th Cir. 1994). Head contends that the procedures he was afforded did not satisfy these minimum requirements in two respects./9

Head first complains that he did not receive adequate notice of the charges that led to his removal. We cannot accept this argument, however. Notice is constitutionally adequate if it is reasonably calculated to apprise interested parties of the proceeding and afford them an opportunity to present their objections. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14 (1978); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); Hartland Sportsman's Club, Inc. v. Town of Delafield, 35 F.3d 1198, 1201 (7th Cir. 1994). In a pair of letters sent over one week prior to the removal hearing, the Board informed Head that a principal removal hearing had been scheduled for Pope Elementary and detailed four particular grounds on which his removal was being sought, see supra note 3. Clearly, Head was apprised of the removal proceedings, and, while the charges against him

may not have been as specific as Head would have liked, they were certainly sufficient to allow him to defend himself. In any event, Head admits that he was fully apprised of the charges at the hearing and that afterwards he was able to submit a brief in response to the evidence presented at the hearing. For both of these reasons, we find it impossible to conclude that Head did not receive adequate notice of the charges that led to his removal.

Head also complains that Margaret Fitzpatrick, the hearing officer who presided over his removal hearing, was not an impartial decisionmaker. Specifically, Head contends that Fitzpatrick cannot be considered an impartial decisionmaker because she was employed by the Board, he had no input on her selection, she had previously represented him and the Board, and she had on a prior occasion presented evidence regarding an earlier controversy at Pope Elementary. Those serving as adjudicators are presumed to act in good faith, honestly, and with integrity. Withrow v. Larkin, 421 U.S. 35, 47 (1975). To overcome this presumption, a plaintiff must come forward with substantial evidence of actual or potential bias, such as evidence of a pecuniary interest in the proceeding, personal animosity toward the plaintiff, or actual prejudgment of the plaintiff's case. Id.; Bakalis, 35 F.3d at 323–26. Evidence of prior familiarity with the plaintiff or his or her situation, or even of involvement in the particular matter under consideration, is not adequate by itself to overcome the presumption. Withrow, 421 U.S. at 47; Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 493 (1976); Staples, 142 F.3d at 387; Panozzo v. Rhoads, 905 F.2d 135, 140 (7th Cir. 1990). Viewed in the light most favorable to Head, the evidence he relies on amounts to nothing more than evidence of Fitzpatrick's prior familiarity with him and Pope Elementary. As such, it does not overcome the presumption of good faith that is afforded adjudicators. Accordingly, Head's claim that Fitzpatrick was biased must fail.

As there appears to be no reason to doubt that the Board afforded Head constitutionally adequate procedures before removing him as principal of Pope Elementary,/10 the Board was entitled to summary judgment on Head's due process property interest claim relating to his removal before the end of his contractual term of employment.

2. Breach of Contract Claim

Head claims that by removing him from his position as principal of Pope Elementary before

the end of his four-year contractual term of employment, the Board breached its contract with him. The district court concluded that no breach occurred because the Illinois School Code governs Head's contract and, in removing Head, the Board complied with the provisions of the Illinois School Code regarding the removal of a principal from a school on probation (specifically 105 Ill. Comp. Stat. 5/34-8.3(d)). Head argues that the district court misinterpreted the contract. We agree.

As the contract between Head and the Board specifically makes Head principal of Pope Elementary, there can be no doubt that the Board terminated the contract by removing Head from that position. The question is whether it had grounds for terminating the contract. As noted above, see supra note 2, the contract provides five grounds for termination. Removal of the principal pursuant to 105 Ill. Comp. Stat. 5/34-8.3(d) is not one of them, nor has the Board ever suggested that any of the grounds for termination has been satisfied. The only ground with any connection to the reasons for Head's removal is, "discharge of the Principal for cause pursuant to Ill. Rev. Stat. Ch. 122, sec. 34-85."/11 But, the Board concedes that it did not follow the procedures or afford Head the rights provided by sec. 34-85.

The district court did not consider whether the Board had established any of the contractual grounds for terminating its contract with Head. Instead, the court concluded that the contract is governed by, and therefore apparently incorporates, the Illinois School Code, and that if Head was properly removed under any provision of the Illinois School Code, there could not be a breach of the contract. This interpretation reads too much into the contract. The contract does provide that Head must fulfill the obligations placed on him by the Illinois School Code, but the contract says nothing about incorporating, wholesale, the various provisions of the Illinois School Code relating to the removal of a principal. There is, for instance, no term allowing for termination of the contract upon "discharge of the principal pursuant to the Illinois School Code." To the contrary, the contract specifically identifies a single provision, sec. 34-85, that must be used in discharging a principal for cause. As we read the Board's contract with Head, the contract may be terminated only if one of the five contractual grounds for termination is satisfied.

Whether by mistake or design, Head's contract grants him greater rights than the Illinois School Code appears to grant him. The Board was

obligated to honor those contractual rights by satisfying one of the five contractual grounds for termination of the contract. It did not do so. Accordingly, we conclude that the district court erred in ruling that the Board did not breach its contract with Head.

IV

For the foregoing reasons, we conclude that there is no merit to Head's due process claims, but that his breach of contract claim should have survived summary judgment. Accordingly, we Affirm in part and Reverse in part the judgment of the district court, and we Remand the case for further proceedings.

/1 The Board of Education was subsequently supplanted by the School Reform Board of Trustees, which itself was recently replaced by a new Board of Education. For simplicity's sake, we will refer to all of these entities simply as "the Board."

/2 The contract provides:

This Agreement may be terminated for any one of the following reasons or by any one of the following methods:

(a)  written agreement of the Local School Council, Board of Education and the Principal;

(b)  discharge of the Principal for cause pursuant to Ill. Rev. Stat. Ch. 122, sec. 34-85;

(c)  closure of the attendance center;

(d)  death, resignation or retirement of the Principal;

(e)  misrepresentation referred to in section IX of this Agreement [which requires certain truthful representations to be made].

/3 Specifically, the criteria detailed were:

A. Failure of the Principal to effectively and/or sufficiently implement the Corrective Action Plan, which has resulted in deficiencies in any of the following:

* School leadership;

* Parent/community partnerships;

* Student centered learning climate;

* Professional development and collaboration;

* Quality instruction plan; and

* School management.

B. Failure of the school to show sufficient increase in student scores on the TAP achievement test.

C. Failure of the Principal to effectively and/or sufficiently follow the recommendation(s) of the Probation Manager.

D. Failure to improve student attendance and/or drop-out rate in the school.

/4 Although the district court purported to simply deny the Board's motion to dismiss in its entirety, it is clear from the district court's order regarding the motion to dismiss, as well as its subsequent summary judgment order, that it considered these claims dismissed.

/5 Actually, the district court's order is silent on whether the claims were being dismissed with or without prejudice. But, since Head does not make an issue of this and it does not matter to our ultimate conclusion, we will assume that the claims were dismissed without prejudice.

/6 We focus here only on what Head alleges in his complaint. In pleadings subsequent to his complaint, Head elaborated on the allegations he made in his complaint. Specifically, he identified Phillip Hansen's criticism of him on a cable access program and the letter informing the Pope Elementary community of the principal removal hearing as particular incidents of stigmatizing publicity. Although we do not consider these allegations, Head suffers no prejudice because they are simply sets of facts that could be proved consistent with the complaint's allegations, which we must take into account in any event. See Nance, 147 F.3d at 590.

/7 Head's complaint might be read more narrowly to allege simply an injury to his reputation, an allegation that most certainly could not survive a motion to dismiss in light of Paul v. Davis, 424 U.S. 693 (1976), which holds that simple defamation by a government actor does not give rise to a due process liberty (or property) interest violation. Under the applicable standard of review, however, we are required to give Head's complaint a generous reading. Therefore, we read Head's complaint to allege more than simple defamation.

/8 Limited pre-termination procedures are permissible only if full post-termination

procedures are available. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-47 (1985). As the parties here do not challenge the proposition that the legal framework governing limited pre-termination procedures applies, we assume full post-termination procedures are available.

/9 Head also suggests, in passing, that the Board's failure to provide him with more elaborate, trial-type rights (like the ability to cross-examine witnesses) deprived him of due process. This is not so. See Staples, 142 F.3d at 387 (pre-termination hearing does not require the incidents of a full, trial-type hearing).

/10 The parties, and the district court, have spent much effort explaining why Head was or was not entitled to the procedures mandated by one or another statutory regime. This sort of inquiry is completely irrelevant, however, to the question of whether Head received constitutionally adequate process. For these purposes, it does not matter if the state provided the procedures it was required to provide under its own laws. Kyle v. Morton High Sch., supra, 144 F.3d at 451-52.

/11 In 1993, Illinois recodified its laws, and when it did so, Ill. Rev. Stat. Ch. 122, sec. 34-85 became 105 Ill. Comp. Stat. 5/34-85.