**Arthur CATLETT, Plaintiff–Appellant,**

v.

**Bessie WOODFIN, et al., Defendants–Appellees.**

No. 00–2145.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 2001.

Decided June 29, 2001.

Before MANION, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

ORDER

Arthur Catlett, a former employee of the Illinois Department of Human Services ("IDHS"), sued various IDHS officials under 42 U.S.C. § 1983, claiming that they

denied him the opportunity to present and cross-examine witnesses during his termination hearing in violation of his Fourteenth Amendment due process rights. The district court granted summary judgment for the defendants and Catlett appeals. We affirm.

Between 1989 and 1995, Catlett worked as a mental health technician at various state mental hospitals operated by IDHS. He was active in his union and served as a union steward, representing coworkers in grievance hearings. In July 1995, due to layoffs, Catlett was transferred to John J. Madden Mental Health Center ("Madden") in Chicago. He claimed that as soon as he started working at Madden, he faced hostility from management personnel due to his previous union activities. During his two years at Madden he was disciplined four separate times: twice for using profane language in the presence of patients, once for neglecting duty and failing to follow policy and procedure (when a patient escaped during his watch), and once for using profane language with a supervisor.

On March 27, 1997, Catlett received a call from his immediate supervisor, Jerlean Cody, the nursing supervisor, who told him without explanation that he was being placed on paid administrative leave. A few weeks later, hospital management informed Catlett's union representatives that it was investigating allegations that Catlett sold illegal drugs and cigarettes to patients. The allegations relating to selling drugs could not be substantiated and were later dropped. The allegations relating to selling cigarettes were substantiated by three Madden patients.

On April 15, 1997, Catlett and his union representatives attended a meeting to discuss the allegations. Present were Cody; Bessie Woodfin, the director of nursing; and an investigator from the Inspector General's office. They informed Catlett of the cigarette allegations and gave him an opportunity to orally respond. At the meeting, Catlett and his union representatives asked to speak with the three patients who made the allegations but were informed by Woodfin that all three patients had been discharged from the hospital and that their addresses could not be given out. He and his union representatives also asked to talk to other patients who might be able to refute the allegations, but were told that Catlett was not allowed on the hospital grounds. Woodfin gave Catlett a copy of the investigation report, which included his accusers' first and last initials. From this information he was able to ascertain his accusers' identities. He told Woodfin and Cody at the meeting that one of his accusers was a gang member and that all three were likely retaliating against him because he had "set limits" on them in the past. He denied the allegations.

Nonetheless, based on "the severity of the charges" and the four previous incidents in Catlett's disciplinary record, his employer discharged him in August 1997. The Illinois Department of Central Management Services notified Catlett in writing of his termination. The letter advised him that he could file a grievance pursuant to the collective bargaining agreement, or he could appeal to the Illinois Civil Service Commission. Even though he found the union's representation of him in prior disciplinary proceedings "deplorable," Catlett nonetheless chose to file a grievance, primarily because he was familiar with the process. The union grievance process has four stages: (1) a meeting with the employee's immediate supervisor; (2) a meeting with the intermediate administrator; (3) a hearing before an IDHS hearing officer; and (4) a full arbitration hearing. The union, rather than the individual employee, decides whether to proceed to arbitration.

A hearing on Catlett's grievance was held before an IDHS hearing officer in December 1997. At the hearing, management submitted witness statements from the three patients. Catlett's union representatives complained to the hearing officer that they did not have an opportunity to question the three patients who made the cigarette allegations. Catlett again denied all the charges and told the hearing officer that he believed the three patients were retaliating against him because he had "set limits" on them in the past. He stated that he would not "jeopardize his job for a few dollars." The hearing officer nonetheless determined that the discharge was for just cause. The union subsequently decided not to proceed to the arbitration stage of the grievance process, citing "a lack of supporting documents and evidence that would assist us in being successful in winning your case." If the union had proceeded to the arbitration stage, it would have had the right to request that the arbitrator subpoena relevant documents and witnesses. And if the arbitrator were to unreasonably deny a subpoena request, Catlett would then have a remedy available. Under the collective bargaining agreement, the union could petition the Director of Central Management Services to subpoena necessary documents and witnesses.

After the union declined to arbitrate, Catlett filed a two-count complaint under 42 U.S.C. § 1983 against Cody, Woodfin, and various other IDHS personnel.[1] Count I alleged that the defendants violated his due process rights by terminating him without allowing him to confront and cross-examine the patients who accused him of wrongdoing or to interview other potential patient witnesses. Count II alleged that defendants were discriminating against Catlett because of his union activi-

ties, in violation of his equal protection rights. In a thorough ten-page order, the district court granted summary judgment to the defendants on both counts, but allowed Catlett to refile the equal protection claim as a retaliation claim. The retaliation claim proceeded to jury trial, and the jury found for the defendants. On appeal Catlett does not challenge any issues relating to the jury verdict or the equal protection/retaliation claim.

Catlett's sole argument on appeal is that the district court erred in granting summary judgment for the defendants on the due process claim, because due process required that he be allowed to confront and cross-examine the adverse patient witnesses and to present patient witnesses of his own during the termination process. This court reviews a district court's grant of summary judgment *de novo*, construing the evidence and the inferences drawn from it in the light most favorable to the non-moving party. *Head v. Chi. Sch. Reform Bd. of Tr.*, 225 F.3d 794, 803 (7th Cir.2000). Summary judgment is appropriate where there is no genuine issue of material fact such that judgment is proper as a matter of law. *Id.*

The Due Process Clause imposes constraints on governmental decisions that deprive individuals of life, liberty, or property. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). A fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citation and internal quotation omitted). Unlike some legal rules, however, "due process" is not a technical conception with a fixed content; rather, it is a flexible concept that calls for

---

1. By agreement of the parties, all but defendants Cody, Woodfin, and Linda Baker, the current director of IDHS, were dismissed from the case.

"such procedural protections as the particular situation demands." *Id.* at 334, 96 S.Ct. 893 (citation and internal quotation omitted).

In the public employment context, courts have long recognized that a public employee has a constitutionally protected property interest in continued employment; thus, the employee may not be deprived of that interest without appropriate procedural safeguards. *Id.* Here, there is no dispute that Catlett, a state employee who could be discharged only for just cause, had a constitutionally protected property interest in his continued employment. The issue then arises what process was due Catlett to challenge his termination.

It is a "root requirement" of due process that deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Loudermill,* 470 U.S. at 542, 105 S.Ct. 1487 (citation and internal quotation omitted). In the employment context, this rule has been applied to require that pre-termination procedures include at a minimum: (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to tell his or her side of the story. *Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487; *Head,* 225 F.3d at 803–04. When there is an opportunity for a full post-termination hearing, due process does not require that the employer provide the employee with "elaborate, trial-type rights" at the pre-termination hearing, such as the right to cross-examine witnesses or present witnesses in the employee's defense. *Head,* 225 F.3d at 804 n. 9; *Staples v. City of Milwaukee,* 142 F.3d 383, 387 (7th Cir.1998). The hearing can be "somewhat truncated," and need only be "an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to

believe that the charges against the employee are true and support the proposed action." *Schacht v. Wisc. Dep't of Corr.,* 175 F.3d 497, 503 (7th Cir.1999) (citation and internal quotations omitted). Moreover, as this court has observed, there is no absolute right of confrontation in civil cases. *See Van Arken v. City of Chicago,* 103 F.3d 1346, 1352 (7th Cir.1997).

Any claim that Catlett was entitled to cross-examine and present witnesses at his pre-termination hearing must fail, a fact Catlett conceded at oral argument. We agree with the district court that the pre-termination procedures available to Catlett were constitutionally adequate, as due process does not give public employees the right to confront or cross-examine witnesses at a pre-termination hearing. *See Staples,* 142 F.3d at 387. Catlett received a pre-termination hearing with his superiors in which he was given detailed information about the charges against him, including the identity of his accusers, and given an opportunity to orally respond. Under the standards announced in *Loudermill,* this was all that was constitutionally required.

Further, we agree with the district court's analysis that the two post-termination procedures available to Catlett – arbitration or appeal to the Civil Service Commission – were also constitutionally adequate, "but he failed to take advantage of either of them." In accordance with *Cliff v. Board of Sch. Commr's of Indianapolis,* 42 F.3d 403, 413 (7th Cir.1994), because Catlett waived the opportunity for a full hearing in which he could have cross-examined his accusers and presented his own witnesses, he cannot now sue in federal court for a denial of due process. Although *Cliff* dealt with waiver of a pre-termination employment hearing, we agree with the district court that there is no reason, nor has Catlett offered any, not to

extend *Cliff*'s holding to the post-termination context.

There is no evidence that the post-termination hearings offered to Catlett – either the appeal to the Civil Service Commission or the arbitration hearing – would have been constitutionally deficient. *See Cliff,* 42 F.3d at 414. Under the rules of the Civil Service Commission, an employee appealing a discharge may conduct extensive discovery, subpoena documents, subpoena witnesses, offer evidence, and cross-examine adverse witnesses. The burden of proof is on the employer.[2] If dissatisfied with the Commission's decision, the employee may seek judicial review in state court. Likewise, the arbitration process would have allowed Catlett to subpoena hospital records revealing the addresses of his accusers, as well as subpoenaing the witnesses themselves, or any other patients whom he believed could substantiate his claims of innocence. We have observed that grievance and arbitration procedures can, and typically do, satisfy the requirements of post-deprivation due process, and that due process does not require the employer to provide an employee with all relevant information in the employer's possession during the grievance process, when the employee can later receive and use that information during arbitration. *Chaney v. Suburban Bus Div. of the Reg'l Transp. Auth.,* 52 F.3d 623, 630 (7th Cir. 1995). Catlett had that opportunity here. The fact that he (or more particularly, the union acting on his behalf) did not avail himself of either post-deprivation hearing

2. Because the employer carries the burden of proof, the unavailability of any patient witnesses would have cut against the employer rather than Catlett.

3. We note that if Catlett were dissatisfied with his union's representation, he may have pursued a claim for breach of duty of fair representation, as the Supreme Court has recognized that a union owes its members a duty of adequate representation in both grievance

is not the fault of the defendants.[3] Accordingly, the decision of the district court is AFFIRMED.

proceedings and negotiations. *See Vaca v. Sipes,* 386 U.S. 171, 173, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Airline Pilots' Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 75, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991).

