UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted November 15, 2006[*]
Decided November 16, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

No. 06-2705

| | |
|---|---|
| YOON JA KIM, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | |
| DAWN FOOD PRODUCTS, INC., *Defendant-Appellee.* | No. 04 C 8141 |
| | Amy J. St. Eve, *Judge.* |

## O R D E R

In this diversity suit Yoon Ja Kim alleges that Dawn Food Products misappropriated her trade secrets, formulas for a chemical composition useful in making bread. Kim made the identical accusation in a prior federal suit that also included a claim for patent infringement, but in the earlier litigation the district court declined to exercise supplemental jurisdiction over the state claims after dismissing the infringement claim at summary judgment. When Kim then started over in state court, Dawn removed the action back to federal court. The district

---

[*]    After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

court granted summary judgment for Dawn, reasoning that the company's undisputed evidence established that it did not incorporate any of Kim's proprietary information into its products. We agree with that view and affirm the judgment.

For nearly a century bakers used potassium bromate as an oxidizing agent in breadmaking to strengthen dough, increase loaf volume, and contribute to a fine-crumb grain. But by the early 1990s, the Food and Drug Administration became concerned about the carcinogenic effects of potassium bromate, and encouraged the baking industry to seek alternatives. Kim, a food chemist, believed that she had found a suitable replacement for potassium bromate and in 1993 applied for a patent for her composition. In May 1995, while Kim's patent application was pending, Dawn inquired about her formulas for a potassium bromate substitute. Kim replied by sending a "Proprietary Materials Agreement" that allowed Dawn, a supplier of commercial baking products, to see her patent application but barred the company from using (except for evaluation purposes) or disclosing any information about the composition. Dawn agreed to these terms but told Kim after reviewing her patent application that it already was using a similar compound as a substitute for potassium bromate.

Kim ultimately obtained her patent in April 1996. Five years later she sued the company in federal court claiming infringement of the patent and, under Indiana law, misappropriation of trade secrets and breach of the Proprietary Materials Agreement. The district court dismissed the infringement claim at summary judgment and, there being no other federal claim, declined to exercise supplemental jurisdiction over the state-law claims. *Kim v. Dawn Food Prods., Inc.*, No. 01 C 1906, 2004 WL 2658068 (N.D. Ill. Oct. 13, 2004). Kim did not appeal this decision, but instead filed a complaint in state court claiming misappropriation of trade secrets, 765 Ill. Comp. Stat. 1065/7, and breach of the Proprietary Materials Agreement. In essence she alleged that Dawn breached the agreement that gave the company access to her potassium bromate substitute and used her formulas in 40 of its products. Dawn moved to return the case to federal court based on diversity of citizenship, and the parties agreed that the relevant time period for this case began in May 1995 when Kim first disclosed her formulas to Dawn and ended in April 1996 when her patent grant disclosed the same information to the public.

After discovery Dawn moved for summary judgment, relying in part on an affidavit from its vice president. He explained that the 40 products identified in Kim's complaint could be divided into three groups: products that use recipes created before, and not altered during, the relevant time period; products that were not manufactured or sold until after the relevant time period; and products that Dawn has developed but never sold. For each product Dawn submitted a "batch card" kept in the ordinary course of business. The batch card lists the product's ingredients and identified all changes made to the recipe over time. The product

history on each of these cards was consistent with Dawn's position that the company did not alter any of its products during the time in question. Kim's only response was that Dawn must have altered its records and destroyed evidence, but she offered no evidence to support her position.

We review the district court's grant of summary judgment *de novo*. *Burks v. Wisconsin Dep't. of Transp.*, 464 F.3d 744, 750 (7th Cir. 2006). We will affirm the judgment if, after viewing the facts in the light most favorable to Kim, we can find no disputed issue of material fact. *Id.*; *F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005). The parties agree that the dispute is governed by the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/1 *et seq.* To prevail on a claim of misappropriation of trade secrets in Illinois, the plaintiff must establish that the information was a trade secret, that the defendant misappropriated the trade secret, and that the defendant used the trade secret in its business. *Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003). For purposes of its motion for summary judgment, Dawn did not contest the first element of Kim's claim: that the formulas it reviewed in 1995 were trade secrets.

Kim does not dispute that Dawn's evidence, if authentic, conclusively establishes that the company did not change its recipes during the relevant time period. Rather, Kim continues to suspect that Dawn altered the batch cards or destroyed other evidence that might have supported her claims. In her view, Dawn should have altered its document-retention policy to preserve all records concerning the 40 relevant products when she first accused the company of infringement in 1996, five years before she filed suit. If a party to litigation acts in bad faith and destroys evidence relevant to a contested issue, a strong inference may be drawn that the evidence would have been detrimental to the party that destroyed the evidence. *Crabtree v. Nat'l. Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001). Dawn's officers testified by affidavit that anything the company destroyed or discarded concerning the relevant products was disposed of in the normal course of business, not in bad faith. In particular, Dawn discarded food samples after a short time so they would not spoil. Dawn also discarded old batch cards, but only after creating new cards with the same information, including the history of changes to the recipe. Kim presented no evidence that Dawn destroyed any evidence in bad faith, and her own suspicion was not a substitute that could defeat a motion for summary judgment. *See Keri v. Bd. of Tr. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006); *Witte v. Wisconsin Dep't. of Corr.*, 434 F.3d 1031, 1037 (7th Cir. 2006).

AFFIRMED.