In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-3962

GERHARD WITTE,

*Plaintiff-Appellant,*

*v.*

WISCONSIN DEPARTMENT OF CORRECTIONS, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-C-0438-C—**Barbara B. Crabb**, *Chief Judge.*

ARGUED JUNE 6, 2005—DECIDED JANUARY 23, 2006

Before ROVNER, WOOD, and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* For more than five years, Dr. Gerhard Witte worked for the Wisconsin Department of Corrections (DOC) as a physician in the Health Services Unit (HSU) at the Racine Correctional Institution. Over that period of time, he was disciplined on several occasions, and at one point was fired, although he was reinstated after an arbitrator reviewed that decision. In August 2003, after yet another incident, Witte took a medical leave of absence that is still ongoing. Claiming constructive discharge, as well as retaliation for his exercise of his First Amendment rights, he filed this suit under 42 U.S.C. § 1983 against the Wisconsin Department of Corrections

and numerous individuals associated with the Department. The district court granted summary judgment for all defendants, and we affirm.

**I**

In 1997, the DOC hired Witte to provide medical services to inmates in the HSU at its Racine facility. Shortly after defendant Sheridan D. Ash was hired as the Unit Manager of the HSU in 1998, tensions arose between Witte and Ash. Witte believed that Ash's management of the unit had a negative effect on the work environment and patient care, and he expressed these concerns through numerous letters to various officials at the DOC. Both Witte and Ash complained to their supervisors about the other; eventually, Ash left the unit in February 2000. Unfortunately, this did not assuage Witte's concerns. After Ash's departure, Witte continued to write to DOC officials to complain that the facility was still delivering substandard care. The problem, Witte thought, was that defendant Kenneth Morgan, the prison warden, had failed to respond to Witte's complaints about Ash's mismanagement.

Defendant Kimberly Russell was hired as Ash's replacement in October 2000. On January 17, 2001, Witte wrote to Morgan to praise the selection of Russell and opined that staff morale at the HSU was the highest since he began working at the facility. His good-will toward Russell ended, however, when Russell notified her supervisors that Witte had violated a rule protecting an inmate's confidential information. Upon Witte's admission that he had indeed violated the rule, the investigation into the matter was dropped without any disciplinary action taken. In early 2001, the DOC began receiving a series of complaints from HSU staff regarding Witte's behavior toward them. A few months later, in June of that year, the DOC opened an

investigation after several nurses from the HSU filed complaints against Witte alleging sexual harassment.

Established DOC procedure requires that upon receiving a complaint, management must conduct an investigation and convene a pre-disciplinary hearing with the employee to determine whether disciplinary action is called for. As a permanent employee, Witte was covered under a collective bargaining agreement that requires the DOC to have "just cause" before taking disciplinary action and allows the union to grieve any disciplinary action taken against an employee. If the union is not satisfied with the result of the grievance, it can take the matter before a neutral arbitrator.

In Witte's case, after the required investigation, the DOC held a pre-disciplinary hearing on July 25, 2001, addressing his alleged violations of the rules prohibiting insubordination and harassment. It concluded this time that disciplinary action was warranted. In the meantime, defendant Steven Casperson, the Division Administrator of the DOC, had received information causing him to question Witte's ability to practice medicine safely. Accordingly, on July 31, 2001, Casperson, with the approval of defendant David E. Burnett, the DOC's Medical Director, informed Witte that he was being suspended with pay indefinitely pending an independent medical examination. Although Witte contends that the DOC did not have legitimate reasons for questioning his competence, he did not file a grievance challenging either the medical examination or the compulsory leave. After the independent examination, the Department found that Witte was fit, and it allowed him to return to work.

While still on leave, Witte was ordered to attend an investigatory interview to discuss a different set of possible rule violations in his care and treatment of several inmates. Witte denied the allegations. His pre-disciplinary hearing

took place a few days after the interview. After that hearing, on January 25, 2002, DOC fired Witte, citing several grounds: violations of work rules prohibiting insubordination; harassment and intimidating behavior; negligence in the performance of duties; and inaccurate or malicious statements about staff or inmates.

Three days later, Witte's union filed a grievance on his behalf protesting his discharge, and the matter moved to arbitration. On January 31, 2003, the arbitrator decided that although the DOC had valid grounds for issuing a written reprimand to Witte for insubordination and making a notation in his personnel record of the sexually harassing behavior, it did not have just cause to discharge Witte. The arbitrator ordered the DOC to reinstate Witte and restore to him lost wages and benefits. At the same time, he noted that his decision in no way reflected an endorsement of Witte's behavior and attitude. The DOC complied with this order.

On February 19, 2003, the Wisconsin Department of Regulation and Licensing notified Witte that Burnett had filed a complaint against him but that the screening panel had decided not to pursue an investigation into the matter. Witte returned to work on February 24. That same day, Burnett provided him with a document setting forth his job expectations, including directives on the treatment of the staff, and informed him that he would receive regular evaluations in the future. Witte also received three written reprimands for violations that occurred prior to his termination. From February through June, Burnett prepared written evaluations noting that Witte met some expectations but not others. The defendants claim that these evaluations were not disciplinary actions, and Witte did not grieve them or the fact that he was subject to regular evaluations.

In the spring of 2003, Russell complained that Witte had threatened to file charges against her with the Nursing

Examining Board after a dispute between the two. Witte maintains that it was not a threat, because he actually filed such a complaint. Around the same time, defendant Jean Carlson, a nurse-practitioner at the HSU, complained about Witte's humiliating behavior toward her. Once again, the DOC conducted investigations and pre-disciplinary hearings, and it issued Witte two letters of reprimand. Witte did not file a grievance concerning these reprimands. In the summer of that year, Burnett conducted an investigative interview with Witte in response to complaints from the staff that he failed to sign progress notes and orders, delayed in seeing inmates, and that he locked the examining room door while seeing inmates. On August 1, a pre-disciplinary hearing was held to discuss Witte's possible violation of these work rules. One hour into the hearing, Witte accepted an offer to adjourn the meeting, after he expressed his discomfort from the stress that he was experiencing. On his physician's recommendation, Witte took a medical leave of absence effective August 1, 2003; since that time, he has not returned to work. According to Witte, he will be able to return to work only when the defendants' harassing behavior ceases. To date, Witte has not been discharged from the Racine facility; instead, he is listed as an employee on administrative leave without pay.

On August 13, 2003, Witte sued the DOC and defendants Ash, Burnett, Carlson, Casperson, James Conte, Jr. (a security officer at Racine), James Greer (director of the HSU), Earl Kielley (employment relations chief of DOC's Bureau of Personnel and Human Services), Kenneth Morgan (the warden at Racine), Linda Morgan (housing unit manager at Racine), Susan Nygren (a nurse at Racine), and Russell for monetary and injunctive relief under 42 U.S.C. § 1983 and the Wisconsin whistle-blower statute, Wis. Stat. § 895.65. The complaint alleged that the defendants had retaliated against him for exercising his rights under the federal and Wisconsin constitutions. It also

alleged that the defendants violated his due process rights in the way they handled his disciplinary proceedings and that he was constructively discharged by being subjected to a hostile work environment.

The defendants moved for summary judgment on the retaliation claims. On September 17, 2004, the court granted the defendants' motion after concluding that Witte's speech was not protected under the federal or state constitution. Because the defendants did not mention the due process claim in their motion, however, the court directed Witte to advise the court if he was still pursuing the claim, and if so, to explain its nature and scope. Witte responded that the intolerable working conditions to which the defendants subjected him amounted to a constructive discharge. He alleged that the defendants had engaged in "a campaign of harassment," which included petty and false allegations against him and sham investigations and disciplinary proceedings. The defendants moved for summary judgment on this claim. On November 4, 2004, the court ruled that Witte had not demonstrated that he had been constructively discharged and that in the alternative, even if defendants' conduct amounted to a constructive discharge, Witte was not deprived of due process. Witte appeals, arguing that the district court erred in granting summary judgment on his due process and whistle-blower claims.

## II

To prevail on a claim for constructive discharge, a plaintiff must prove both that the defendant engaged in "harassing behavior sufficiently severe or pervasive to alter the conditions of [her] employment," and that "the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 133-34 (2004) (internal

quotations omitted). Although *Suders* addressed the topic of constructive discharge in the context of a Title VII hostile-environment claim, we have held that the same general approach applies equally to constructive discharge claims brought under the due process clause. See *Levenstein v. Salafsky*, 414 F.3d 767, 774 (7th Cir. 2005). "Creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case." *Suders*, 542 U.S. at 149. Working conditions for constructive discharge must be even more egregious than those that would support a finding of a hostile work environment; absent extraordinary circumstances, an employee is expected to remain employed while seeking redress. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004).

Witte argues that he meets this demanding test. A trier of fact could find (he contends) that the defendants engaged in a conspiracy to cause him relentless stress and anxiety that ultimately forced him to take a medical leave of absence, equivalent to a resignation. He claims that the record is replete with evidence showing that he was subjected to a "steady barrage of false allegations and petty charges" and sham investigations and pre-disciplinary proceedings, and he faults the district court for failing to take full account of these facts in the light most favorable to him, as it should have done at the summary judgment stage.

But at the outset, Witte confronts two threshold problems. The first is substantive: he has sued the Wisconsin Department of Corrections under 42 U.S.C. § 1983, but it is well established that the "state," which the DOC is for this purpose, is not a "person" that may be sued under that statute. See *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66-67 (1989). That reason alone is enough for us to affirm the district court's summary judgment in favor of the DOC. The remainder of our discussion applies only to the individual defendants. As for them, Witte's first problem is

procedural. In reviewing Witte's claim, the district court considered only those facts that were presented in a way that complied with its standing instructions. From this standpoint, it found that Witte had not done enough to put the facts proposed by the defendants into dispute. (The Western District of Wisconsin's website directs one to a document entitled "Helpful Tips for Filing a Summary Judgment Motion in Cases Assigned to Judge Barbara B. Crabb." See http://www.wiwd. uscourts. gov/assets/pdf/bbc_proc_mo_sum_judg.pdf. Chief Judge Crabb's "helpful tips" are quite typical of the procedures normally required by local rule.) All facts necessary to sustain a party's position on a motion for summary judgment must be explicitly proposed as findings of fact, and the judge will not search the record for factual evidence. Each proposed fact must be set out in a separate, numbered paragraph, followed by specific references to admissible evidence that supports it. The non-moving party must respond to the moving party's proposed facts by answering each numbered fact proposed by the moving party in separate paragraphs, using the same numbering system. Finally, the judge will accept a fact properly proposed by one side as undisputed unless the other side properly responds to the proposed fact and establishes that it is in dispute. District courts have broad discretion to control the proceedings before them, and here as elsewhere we review the district court's approach only for an abuse of discretion. Compare *Koszola v. Bd. of Educ., City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004) (addressing local rules).

The court found that Witte's statement of facts did not comply with its requirements. Most of Witte's responses to the defendants' proposed facts were off point. In some instances, the evidence to which he cited did not demonstrate a real dispute. More seriously, Witte cited to evidence in the record that was inadmissible hearsay, or he simply repeated his contentions instead of pointing to evidentiary

support for them. For example, in response to the defen-
dants' proposed facts describing each investigation and
disciplinary action taken, Witte said only that they con-
cerned "false and petty allegations," and that
the proceedings were pretextual. He cited to his own affi-
davit which repeated the same statements without any
reference to evidence. This is not the kind of statement
on personal knowledge that may properly be considered
in an affidavit. Instead, it is just a self-serving conclu-
sion that is insufficient by itself to defeat a motion for
summary judgment. See *Albiero v. City of Kankakee*, 246
F.3d 927, 933 (7th Cir. 2001). Thus, we find that the court
did not abuse its discretion when it limited its review to the
proposed facts that complied with its instructions.

Based on the facts properly before the district court, we
too find that no reasonable trier of fact could find that Witte
was constructively discharged. We accept as true that from
2000 on, he was subjected to a steady stream of complaints,
disciplinary proceedings, and the occasional sanction. But
Witte presented no evidence that would support a finding
that the defendants took these actions solely to harass him.
Instead, the record shows that the defendants were re-
sponding to complaints from both inmates and the HSU
staff. Witte does not even claim that the DOC violated its
own policies when it looked into the various matters. His
constructive discharge claim thus fails at the threshold: he
cannot show, as *Suders* requires, that the defendants
created a hostile work environment to begin with. See
*Suders*, 542 U.S. at 149. (We note that there is also a
serious question whether he satisfies the "discharge"
element of this claim, given the fact that he stands ready to
return to work as soon as the defendants "cease their
hostile actions once and for all." Given our conclusion with
respect to this theory, we have no need to resolve this
point.)

**III**

Witte also appears to be challenging the procedures that DOC used in connection with his alleged constructive discharge. Given our conclusion that he was not constructively discharged at all, these procedural claims must also fail. Even if we gave Witte the benefit of the doubt on the discharge question, however, his procedural complaints are without merit. It is undisputed that he had the right to file a grievance after any of the alleged harassing disciplinary charges, but (with the exception of the successful grievance that resulted in his reinstatement) he never did so. Importantly, he never filed a grievance after he took his extended medical leave of absence allegedly because he concluded that he had constructively been discharged. Witte concedes that he is entitled to a pre-disciplinary hearing if and when he returns to work. There is nothing in this record to suggest that such a hearing would be futile, or, more importantly, that the post-termination procedures available to him would be unavailing. See generally *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

Perhaps the most telling fact for this purpose is Witte's failure to take advantage of the preventive and corrective opportunities available to him, such as filing a grievance with his union. He was successful when he grieved his termination before the arbitrator and has presented no evidence that another appearance before an arbitrator would be a sham proceeding. As the district court observed, citing *Wozniak v. Conry*, 236 F.3d 888, 890 (7th Cir. 2001), "[o]ne who has spurned an invitation to explain himself can't complain that he has been deprived of an opportunity to be heard." That describes Witte's situation perfectly. The district court's summary judgment for the defendants was equally correct if we understand his argument as a procedural one.

**IV**

Finally, we consider Witte's attempt to present a retaliation claim, under either the First Amendment or Wisconsin's whistle-blower statute, Wis. Stat. § 895.65. The district court dismissed this claim on the grounds that Witte's speech was not protected under either the federal or the state constitution. Witte concedes this point, which eliminates any chance for relief under § 1983 and the First Amendment. He argues, however, that the court failed to consider an alternative ground for relief under the Wisconsin statute, namely, retaliation because "the employer or employer's agent believes that the employee so exercised his or her [First Amendment or Wis. Const. Art. I, sec. 3] rights." Wis. Stat. § 895.65(2). Witte argues that even if the employee's speech is unprotected, the statute protects the employee when the employer retaliates against him under the mistaken belief that the speech was protected. The defendants do not read the statute this way. In their view, the word "believes" modifies the word "employee," and thus the phrase means that as long as protected speech is involved, the statute protects an employee who had not engaged in the specified conduct but was subject to retaliation because the employer erroneously thought that he (rather than another person) had done so.

Although the question of how properly to interpret the state statute may be an interesting one, we need not resolve it here. As the defendants point out, Witte failed to raise this theory in his brief in opposition to the defendants' motion for summary judgment. Instead, he relied exclusively on the argument that he had engaged in protected speech. The defendants certainly so understood his position, because they wrote in their reply brief in the district court that "Plaintiff does not contest and, therefore, concedes Defendants' position that free speech rights under the Wisconsin and United States Constitutions are coextensive and that therefore Plaintiff's claims stand or fall on the

same legal analysis. Plaintiff does not contest, and therefore, concedes Defendants' position that if Witte's speech is not constitutionally protected, his claim under Wis. Stat. § 895.65(1) also fails." Witte apparently mentioned the new theory in the last four pages of his rebuttal brief, but those pages are missing from the record. The omission is unimportant, however, because this was too late in any event to raise a new theory.

We agree with the defendants that Witte forfeited his alternative argument under § 895.65(2). By failing to raise it in his brief opposing summary judgment, he lost the opportunity to urge it in both the district court and this court. See *Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001); *United States v. Andreas*, 150 F.3d 766, 769 (7th Cir. 1998).

The judgment of the district court is AFFIRMED.

No. 04-3962 13

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*