LDC-728 MILWAUKEE, LLC, a Wisconsin limited liability corporation, Plaintiff-Respondent,

v.

John W. RAETTIG and Frauchiger's, LLC, a Wisconsin limited liability corporation, Defendants-Appellants.

Court of Appeals

*No. 2005AP3130. Submitted on briefs October 3, 2006.
—Decided November 21, 2006.*

2006 WI App 258

(Also reported in 727 N.W.2d 82.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Thomas J. Nitschke* of *Nitschke & Sika, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Monika A. Hartl* of *Derzon & Menard, S.C.*, Milwaukee.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. WEDEMEYER, P.J. John W. Raettig and Frauchiger's, LLC (hereinafter "Raettig") appeal from a judgment entered following a bench trial, where the trial court awarded LDC-728 Milwaukee, LLC $20,000 in breach of contract damages, and $10,320.45 in attorney's fees. Raettig claims the trial court erred in ruling that an implied duty of good faith existed and that Raettig breached the duty of good faith. Because the trial court did not err in finding that the duty of good faith in the contract at issue was breached, we affirm.

## BACKGROUND

¶ 2. Milwaukee at Wisconsin, LLC (Raettig's former corporation, hereinafter "MW-LLC") owned a building located at 728 North Milwaukee Street, which was in foreclosure. Shortly before the foreclosure actually took place, MW-LLC sold the building to LDC-728. The building was sold for $500,000. Raettig, through his new company, Frauchiger's, entered into a lease with LDC-728 as a tenant in the building. Raettig signed the lease as the sole member of Frauchiger's and personally guaranteed the lease. The lease term was for

four years commencing on December 30, 2003. The lease agreement also gave Raettig a right of first refusal in the event LDC-728 received any offers to purchase the building.

¶ 3. On February 10, 2004, TS Miller, LLC offered to purchase the building for $825,000. Pursuant to the lease, LDC-728 presented the offer to Raettig which, in turn, exercised its right of first refusal by assuming TS Miller's offer.[1] Raettig then tendered $20,000 in earnest money pursuant to the offer.

¶ 4. Based on the offer, Raettig then had sixty days to secure or waive the financing contingency. Raettig spoke informally with Vito Taphorn, a commercial banker at LaSalle Bank, who told Raettig that the project was not feasible. Raettig also spoke with a private financier, Anthony D'Acquisto, who also determined that the project was not feasible. Finally, Raettig spoke with a tenant in the building to see if the tenant would be interested in purchasing the building with Raettig.

¶ 5. At the end of the sixty days, Raettig did not secure financing or seek an extension. LDC-728 did not return his $20,000 earnest money. LDC-728 filed a claim alleging that Frauchiger's breached the contract and sought to enforce the personal guarantee on the contract against Raettig. Raettig filed a separate suit for return of the earnest money. The two separate suits were consolidated and tried to the court.

¶ 6. At the conclusion of the bench trial, the trial court found that Raettig and Frauchiger's had breached the explicit contractual duty of good faith in the offer to purchase and the implied duty of good faith contained

---

[1] The purchase prices differed slightly in the offers due to circumstances not relevant to this dispute.

in the lease and the offer to purchase. This finding was based on the inference that Raettig knew there was no likelihood that he could satisfy the financing contingency and therefore breached the duty of good faith by exercising the lease option of the right of first refusal. The trial court found that there was no likelihood that the financing contingency could have been met when the right of first refusal was exercised. Further, as a result of the time delay with respect to the right of first refusal option, TS Miller was no longer interested in purchasing the building.

¶ 7. Based on the trial court's findings, it granted judgment in favor of LDC-728 and awarded it $20,000 in damages. Because Raettig had paid that sum in earnest money to LDC-728, the trial court ruled that LDC-728 could simply keep the earnest money as damages and did not have to return it to Raettig. Raettig appeals from that judgment.

DISCUSSION

¶ 8. Raettig contends that the trial court erred by concluding that there was a duty of good faith relative to the right of first refusal option and in finding that Raettig breached that duty. Our standard for reviewing interpretations of contractual provisions is *de novo, see Everson v. Lorenz*, 2005 WI 51, ¶ 10, 280 Wis. 2d 1, 695 N.W.2d 298; however, findings of fact will be reviewed subject to the clearly erroneous standard. WIS. STAT. § 805.17(2); *Richards v. Land Star Group, Inc.*, 224 Wis. 2d 829, 846, 593 N.W.2d 103 (Ct. App. 1999). Based on those standards, we conclude that the trial court did not err in ruling that a duty of good faith existed and

that the trial court did not err in finding that Raettig breached that duty. Accordingly, we affirm the trial court.[2]

## A. *Duty of Good Faith.*

██

¶ 9. Raettig's first contention is that the trial court erred in ruling that there was a duty of good faith relative to his right to exercise the right of first refusal option. We reject his contention.

---

[2] Raettig raises a third contention—that the duty of good faith should not be used in this case because LDC-728 did not have "clean hands." In support of this contention, Raettig points to certain contractual obligations that it contends LDC-728 did not satisfy. We summarily reject this contention, however, because the record reflects that Raettig expressly waived any issues in regard to LDC-728's obligations under the offer to purchase:

> [LDC-728's COUNSEL]: Judge, can I just give one more clarification?
>
> I want to make sure under the Offer to Purchase, under Section 5 where seller's obligation is. My understanding that the Defendant has now waived any issue as pertains to the seller's obligation as pertains to this particular lawsuit, is that your understanding?
>
> THE COURT: That is my understanding. And I think the essence [of] what [Raettig's counsel] said to us in Chambers was they either fulfilled them or to any extent that we believe they didn't fulfill them they weren't pertinent to the core dispute here. So we're not going to be relying upon any asserted failure to meet the contingency part of the seller as a defense of this action. That was my understanding of what was said.
>
> . . . .
>
> THE COURT: Is that accurate, [RAETTIG's COUNSEL]?
>
> [RAETTIG's COUNSEL]: That is very accurate.

¶ 10. The offer, which Raettig assumed from TS Miller, had several provisions which put obligations on him as the buyer. The contingencies included the buyer obtaining surveys, permits, and licenses and required the following:

> 4.1.9. Buyer obtaining a commercial mortgage loan from an institutional lender in an amount equal to at least $900,000.00, for a term of not less than five (5) years, amortized over not less than twenty (20) years, with a fixed annual interest rate of no more than 6.250% and monthly payments of principal and interest not exceeding $6,578.00. Buyer shall have the right to prepay the loan at any time provided Buyer pays applicable prepayment premiums, if any.
>
> . . . .
>
> 4.2. If Buyer does not notify Seller within sixty (60) days after the Acceptance Date that the contingencies set forth above have been satisfied or waived by Buyer, this Offer shall terminate and all Earnest Money paid hereunder shall be immediately returned to Buyer. *Buyer agrees to use its good faith efforts to make such inquiries, retain such consultants, make such applications and perform such acts as may be reasonably necessary or appropriate to enable Buyer to satisfy the above stated contingencies* . . . .

(Emphasis added.) Thus, the duty of good faith was explicit within the offer. Raettig does not appear to challenge this portion of the trial court's ruling. Rather, he focuses on the trial court's finding that there was an implied duty of good faith with respect to Raettig's decision to exercise the option when it was clear he would never be able to complete the purchase. As pertinent, the trial court ruled:

> "[The] duty of good faith means that each party to a contract will not do something which will have the

effect of injuring or destroying the rights ... of the other party to receive the benefits of the contract." [WI JI—3044]. LDC had the right under the lease terms to accept a bona fide offer to purchase and sell the premises, subject to Frauchiger's right of first refusal .... By exercising the right of first refusal under circumstances in which there was no likelihood that the financing contingency of ex. 2 could be met within the 60–day period, the defendant substantially interfered with the plaintiff's right to sell the premises, and thereby injured or destroyed the right of the plaintiff to do that which they were entitled to do under the lease.

Given the circumstances of th[e] original sale and the provisions of the closing statement ... it is clear that Frauchiger's was encountering significant difficulties in successfully managing the debt structure of the building with a far lesser primary debt. [The primary mortgage debt at the time of the sale in December 2003 was $385,615.] The likelihood that Frauchiger's, by and through Mr. Raettig, could convince a financial institution or independent investors that the building could be profitably maintained after taking on ... substantially more primary debt within several months of the foreclosure-avoidance sale is literally nil .... Any reasonable fact-finder could only conclude that at the time that the right of first refusal was exercised, Frauchiger's and Mr. Raettig knew that there was no likelihood that they could meet the financing contingency and, hence, they breached their duty of good faith in exercising the option.

In essence, the trial court ruled that based on the facts in this case, including the recent foreclosure on the building, and the avoidance of the foreclosure with the sale of the building for $500,000, the record contained facts which led to only one conclusion—there was no good faith belief that Raettig had *any* chance of securing financing. The trial court concluded that under

those circumstances, Raettig should have declined his right of first refusal.

¶ 11. We conclude that the trial court did not err. In every contract there is the implied duty of good faith and fair dealing. *Estate of Chayka*, 47 Wis. 2d 102, 108, 176 N.W.2d 561 (1970). This duty exists in the performance of the contract. Raettig contends that the right of first refusal is a *right* and therefore there is no duty of good faith. We disagree. The right of first refusal is a provision of the contract. With that provision comes the *implied* duty of good faith that the right will only be exercised *in good faith. See id.* at 107–08 (duty of good faith attaches both at the time of execution and in performance). Accordingly, we agree with the trial court that an implied duty of good faith existed in this case.[3]

*B. Breach of Duty of Good Faith.*

¶ 12. Raettig also contends that the trial court erred in finding that he breached the duty of good faith

---

[3] We also conclude that *Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis. 2d 568, 431 N.W.2d 721 (Ct. App. 1988) is distinguishable from the instant case. In that case, we held that no breach of the duty of good faith dealing occurred. *Id.* at 578. The language Raettig seizes on from *Super Valu* cannot be pulled out of context. The *Super Valu* case involved a grocery store wholesaler and a grocery store and the wholesaler's decision to open a competing grocery store. *Id.* at 570–71. Our discussion on the duty of good faith related to whether the franchisor-franchisee relationship created a fiduciary duty. *Id.* at 578. We concluded that a fiduciary duty was not created and therefore there was no breach of the duty of good faith. *Id.* Accordingly, the *Super Valu* case is not pertinent to the instant case.

and that the trial court created a "commercial reasonableness" standard that does not exist. We reject this contention.

¶ 13. Based on the foregoing, there was an implied duty of good faith relative to the lease option. Thus, Raettig had the right to exercise the option of first refusal if, in good faith, he had a reasonable chance of actually completing the transaction. The trial court found that based on the facts in this record, there was no reasonable chance of Raettig actually completing that transaction and Raettig knew, or should have known, that this was so. Despite this knowledge, Raettig elected to exercise the option. That conduct violated the implied duty of good faith. The trial court's finding is not clearly erroneous. There is evidence to support it, including the fact that Raettig had, in the recent past, been unable to make payments on the much lower original mortgage amount of $385,615; that Raettig had recently staved off foreclosure by selling the building for $500,000; that Raettig was having difficulties keeping up with the rent obligations under the lease; and that the substantially higher purchase price would not be feasible to finance. As the trial court noted, the "likelihood that . . . Raettig[] could convince a financial institution or independent investors that the building could be profitably maintained after taking on . . . substantially more primary debt [$783,000] within several months of the foreclosure-avoidance sale [wa]s literally nil."

¶ 14. Moreover, we also conclude that Raettig breached the explicit contractual duty of good faith with respect to the financing contingency. As noted by the trial court: "informal conversation with one agent of one lending institution when trying to finance a $783,000 real estate transaction under very difficult

circumstances does not rise to the level of a good faith attempt to meet the financing contingency." Raettig did not complete any loan applications, offered no prospectus, and did not produce written plans of any kind. Raettig did not engage in conduct to satisfy the meaning of the term "good faith." He talked to a banker, a potential investor and a tenant—three informal conversations. Under the facts and circumstances here, that was simply insufficient.

¶ 15. Finally, although the trial court uses the term "commercially reasonable," in context, that term was not intended to create a standard different from that currently in effect. The trial court was referring to the fact that this transaction was a commercial one as opposed to a residential one. Thus, that fact is simply one of the circumstances under which a court reviews whether Raettig's actions satisfy the duty of good faith. The absence of good faith may consist of inaction, evasion of the spirit of the bargain, lack of diligence, and slacking off. *See Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 797, 541 N.W.2d 203 (Ct. App. 1995). Here, the trial court found that Raettig's inaction and lack of diligence constituted a breach of the duty of good faith. That finding is supported by the record and is not clearly erroneous.

*By the Court.*—Judgment affirmed.