KESSLER, P.J.
¶1 Edward Towle appeals an order of the circuit court granting summary judgment to Deborah Kerr, the Board of Education of the School District of Brown Deer, and the School District of Brown Deer. Towle contends that the circuit court erred in finding that the defendants did not breach Towle's contract when he was placed on an administrative leave, that Towle's constitutional property and liberty interests were not violated, that the defendants did not violate a duty of good faith and fair dealing, and that the defendants did not tortiously interfere with Towle's contract or prospective contracts. We affirm.
BACKGROUND
Undisputed Facts
¶2 Towle was the business manager for the School District of Brown Deer from February 2007 through June 30, 2010. Towle's final contract with the District ran from July 1, 2008 through June 30, 2010. On February 9, 2009, Kerr, as the superintendent of the District, placed Towle on paid administrative leave pending an investigation into financial irregularities. Specifically, the District was investigating: (1) insufficient funds in the District's bank account; (2) wire transfers by unauthorized persons while Towle was out sick; (3) procedures for obtaining draw requests on the District's line of credit; and (4) disorganization.
¶3 On February 10, 2009, Kerr met with Kara Schuerman, the president of the Brown Deer Education Association (BDEA). Towle, as business manager of the District, was a member of the District's bargaining team and had frequent contact with the BDEA. The District and the BDEA were in the process of labor negotiations. Kerr informed Schuerman that Towle was placed on administrative leave pending an investigation into financial irregularities. Kerr suggested that Schuerman inform the BDEA that Towle was on leave to prevent miscommunication during labor negotiations.
¶4 Schuerman subsequently sent the following email to the eleven members of the BDEA:
I was asked to inform you, on behalf of Dr. Kerr, that our business manager Edward Towle has been placed on administrative leave for irregular accounting and business practices.
Dr. Kerr is investigating details and working with the [Department of Public Instruction] to perform necessary budget predictions (a budget will be presented to the Finance Committee March 9th). She has some ideas as to interim business manager possibilities but we are not at that point yet.
Dr. Kerr felt it important that you are made aware of the issue as you will certainly hear rumblings in your building and the community. We have no more information other than the above first statement. If you have any questions, please don't hesitate to ask me.
¶5 On February 13, 2009, counsel for the District informed Towle's counsel of the specific areas of investigation. Towle's counsel responded to the letter addressing the District's concerns and then met with District officials to discuss the concerns. On March 30, 2009, a public auditing firm, Virchow, Krause & Company, LLP, sent the District the results of its independent investigation. The report identified irregular findings in multiple areas, including, but not limited to, cash management, food service claims, and budget variances. Towle continuously requested to return to work, however, Kerr maintained Towle's administrative leave.
¶6 Towle's counsel then suggested that Kerr write letters of reference for Towle so that Towle could seek employment elsewhere. On May 22, 2009, Kerr and Towle signed a "Memorandum of Understanding," in which Kerr agreed to provide Towle with letters of reference for other employment opportunities and Towle agreed not to use those letters in future litigation. Kerr and Towle also entered into a "Tolling Agreement" regarding any injuries alleged by Towle, giving Towle additional time to find new employment without filing a notice of claim.
¶7 In the months that followed, Kerr provided multiple reference letters on Towle's behalf, but Towle did not obtain employment. In July 2009, Towle filed a notice of claim with the District, seeking reinstatement and various damages. On November 3, 2009, Kerr provided Towle with a notice that the Board of Education of the School District of Brown Deer (the Board) was considering non-renewal of Towle's contract. On November 9, 2009, the Board denied Towle's claim. The following day, Kerr filed charges against Towle with the Board and sought termination of Towle's employment.
¶8 In January 2010, the parties attempted mediation, which was unsuccessful. At the end of the month, Kerr sent a letter to the Board president stating that the District no longer wished to terminate Towle, but that it wished to proceed with non-renewal proceedings. A hearing on Kerr's request for non-renewal was ultimately scheduled for April 2010.
¶9 In the interim, Towle applied for a business manager position with the Grayslake School District in Illinois. Kerr provided Towle with a reference letter and Towle was offered the position. On April 7, 2010, Towle signed a contract with the Grayslake School District. Five days later, Towle submitted a letter of resignation to the School District of Brown Deer. Towle stated his effective resignation date as July 1, 2010. The Board accepted Towle's resignation and the non-renewal hearing was cancelled. Towle continued to receive all economic benefits under his District contract through June 30, 2010.
¶10 Following Towle's resignation letter, local media ran a series of articles about Towle's administrative leave, resignation, and payment. The Grayslake School District rescinded Towle's offer. Kerr subsequently issued a statement stating, as relevant:
Mr. Towle was hired before I assumed this position, and his contract was extended in June 2008 for a two-year period. However, I placed Mr. Towle on paid administrative leave pending an investigation into serious concerns about operations in the Business Office. After discussing this matter with the Board and our legal counsel, we followed the terms of his existing contract, which included continued payment of his salary during this administrative leave.
While this was happening, Mr. Towle filed a Notice of Claim against the District seeking millions of dollars. We denied the claim. As a result, it is likely that Mr. Towle will file a lawsuit against the District in the next several weeks. Going forward, our efforts are focused on protecting the taxpayers and the School District and following the law. The District has tried several times to resolve this matter in the past year, including the letter of recommendation I wrote for Mr. Towle.... While I did offer to speak with the leaders of the Grayslake School District #46 about the letter, I was not contacted after making several offers.
Federal Court Proceedings
¶11 On May 7, 2010, Towle filed a complaint against Kerr, the Board of Education of the School District of Brown Deer, and the School District of Brown Deer (collectively, "Kerr") in Milwaukee County Circuit Court. An amended complaint stated eight causes of action: (1) breach of the employment contract; (2) defamation; (3) tortious interference with contracts or potential contracts; (4) violation of due process under the Wisconsin Constitution; (5) violation of due process under the United States Constitution; (6) breach of contract as to the Memorandum of Understanding; (7) breach of the covenant of good faith and fair dealing as to the employment contract; and (8) breach of the covenant of good faith and fair dealing as to the Memorandum of Understanding. Because of the alleged violation of the United States Constitution, Kerr removed the matter to the United States District Court for the Eastern District of Wisconsin. The federal district court found that Kerr did not violate Towle's due process rights under the United States Constitution and remanded Towle's state law claims back to the circuit court.
Circuit Court Proceedings
¶12 Following remand, five causes of action remained in the circuit court: (1) breach of the employment contract; (2) defamation; (3) tortious interference with contracts or potential contracts; (4) violation of due process under the Wisconsin Constitution; and (5) breach of the covenant of good faith and fair dealing as to the employment contract.[1] Towle filed for partial summary judgment as to liability on the breach of contract and due process claims. Kerr filed for summary judgment seeking dismissal of all of Towle's claims.
¶13 The circuit court granted summary judgment in favor in Kerr and dismissed all of Towle's claims. This appeal follows. Additional facts will be included in the discussion as necessary.
DISCUSSION
¶14 On appeal Towle argues that the circuit court erred in granting summary judgment to Kerr as to the following claims: (1) breach of the employment contract; (2) tortious interference with contracts or potential contracts; (3) violation of due process under the Wisconsin Constitution; and (4) breach of the covenant of good faith and fair dealing as to the employment contract. We address each issue.
¶15 We review a grant of summary judgment de novo, applying the same methodology as the circuit court. See Mercer v. City of Fond du Lac , 2010 WI App 15, ¶8, 323 Wis. 2d 67, 780 N.W.2d 188 (2009). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2015-16).[2] A factual issue is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. Mercer , 323 Wis. 2d 67, ¶8.
Breach of Employment Contract
¶16 Towle argues that the circuit court erroneously found that Kerr[3] did not breach Towle's employment contract when she placed him on administrative leave. Specifically, relying on Kabes v. School District of River Falls , 2004 WI App 55, 270 Wis. 2d 502, 677 N.W.2d 667, and Head v. Chicago School Reform Board of Trustees , 225 F.3d 794 (7th Cir. 2000), Towle contends that Kerr breached the contract by not allowing Towle to perform his duties as business manager for much of his contract term and by "constructively discharg[ing]" him from his position." (Capitalization and bolding omitted.)
¶17 In Kabes , Sharon Kabes and Roger Buchholz were both hired at River Falls High School-Kabes as the principal and Buchholz as the assistant principal. Id. , 270 Wis. 2d 502, ¶¶2-3. Prior to the end of their contracts, the school district and board unilaterally reassigned Kabes to the local elementary school and Buchholz to the local middle school. Id. , ¶4. Both Kabes and Buchholz sued the district and the board for breach of contract. Id. We concluded that the district and the board breached the contracts because the reassignments were contractual modifications made without Kabes's and Buchholz's consent. Id. , ¶9. Similarly in Head , the Chicago School Reform Board of Trustees removed Lawrence Head from his position as principal of an elementary school and reassigned him to administrative duties in the Department of Schools and Regions. Id. , 225 F.3d at 798. Among the multiple claims Head brought against the Board was a breach of contract claim. Id. at 805. The United States Court of Appeals for the Seventh Circuit concluded that the Board breached its contract with Head when it reassigned him to an administrative position because Head's contract specifically made Head the principal of the elementary school. Id.
¶18 Contrary to Towle's assertion, neither case stands for the proposition that "when a school administrator's contract provides that he or she will be employed in a specific position, it is a breach of contract to remove the administrator from that position without complying with the contract." Unlike the facts in Kabes and Head , Towle was neither removed from his business manager position, nor was he unilaterally reassigned to a different position. Towle was placed on a paid administrative leave pending an investigation into his job performance-Towle's contract did not prohibit such action.
¶19 We also conclude that Towle was not constructively discharged from his position with the School District of Brown Deer. Towle contends that his administrative leave amounted to a constructive discharge because he was given no duties to perform during his leave and was required to "sit by idly" while hoping to return to his position.
¶20 "The doctrine of constructive discharge recognizes that some resignations are coerced, tantamount to a termination." Strozinsky v. School Dist. of Brown Deer , 2000 WI 97, ¶68, 237 Wis. 2d 19, 614 N.W.2d 443. To show that a constructive discharge occurred, an employee must establish that his or her employment conditions were so intolerable that the employee felt compelled to resign. Id. , ¶75. Typically, to succeed on a constructive discharge claim, "a plaintiff must prove both that the defendant engaged in 'harassing behavior sufficiently severe or pervasive to alter the conditions of [his or her] employment,' and that 'the abusive working environment became so intolerable that [his or her] resignation qualified as a fitting response.' " Witte v. DOC , 434 F.3d 1031, 1035 (7th Cir. 2006), overruled on other grounds by Hill v. Tangherlini , 724 F.3d 965 (7th Cir. 2013) (citation omitted).
¶21 The analysis requires an "objective inquiry" into the circumstances at the time that Towle's employment ended. See Strozinsky , 237 Wis. 2d 19, ¶76. Towle was placed on administrative leave due to concerns about his job performance, specifically his management of District funds. Towle was on leave while an independent auditing company conducted an investigation into financial irregularities. The results of the investigation identified several irregularities. During Towle's leave, Towle and Kerr came to an agreement that Towle would seek employment outside of the District and that Kerr would provide reference letters. Kerr provided the letters, the parties engaged in mediation, hearing dates were scheduled and changed, and Towle ultimately found new employment-with Kerr's assistance. None of these facts suggest that Kerr engaged in "harassing behavior," or created an "intolerable" work environment. See Witte , 434 F.2d at 1035 (citation omitted). The record does not support Towle's claim that he was constructively discharged.
Tortious Interference with Contract or Potential Contracts
¶22 Towle contends that the circuit court erred in dismissing his tortious interference claim for a multitude of reasons. The circuit court dismissed his claim, finding that Towle did not file a proper notice of claim pursuant to WIS. STAT. § 893.80(1d)(a), which requires written notice to particular government entities within 120 days of the event giving rise to the claim. The court also found that Towle's claim was barred by WIS. STAT. § 893.80(4), which bars intentional tort suits against certain government entities. We agree.
¶23 WISCONSIN STAT. § 893.80(1d)(a) provides:
(1d) Except as provided in subs. (1g), (1m), (1p) and (8), no action may be brought or maintained against any volunteer fire company organized under [ WIS. STAT. ] ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employee of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:
(a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employee under [ WIS. STAT. ] s. 801.11. Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employee[.]
(Emphasis added.)
¶24 Towle contends that he filed a notice of claim against Kerr on July 16, 2009, alleging that he was applying for other business manager positions but Kerr's "unlawful conduct" was impairing his abilities to find other positions. Towle asserts that this notice is sufficient under the statute, and that even if it is not, Kerr had actual notice of his tortious interference claim.
¶25 The record does not support Towle's contention. As the circuit court noted, nothing in the July 2009 notice suggests that Towle was asserting a tortious interference with contract claim. The closest the notice comes to even referencing tortious interference with contract or potential contracts by Kerr is the following:
As a result of Dr. Kerr's defamatory statements and breach of confidentiality, however, at least one district has withdrawn its invitation for Mr. Towle to be interviewed as a finalist for a business manager position and several other districts have declined to offer him a position as a business manager. It appears that, as a result of Dr. Kerr's unlawful conduct and her ... refusal to allow Mr. Towle to return to work as the Business Manager of the School District of Brown Deer, Mr. Towle's ability to ever find another position in school administration has been substantially impaired.
Towle does not reference any contracts that were affected, any actual job opportunities that were lost at that point, or any specific conduct by Kerr that impaired any specific job opportunities. The notice was insufficient.
¶26 Towle also contends that his circuit court complaint, initially filed in May 2010, included a tortious interference claim which provided Kerr with sufficient statutory notice of that claim. The complaint states that Towle's administrative leave and Kerr's subsequent public statements interfered with Towle's "relationships with other districts." Towle's arguments ignore WIS. STAT. § 893.80(4), which immunizes school districts, among other governmental units, from liability for acts that involve the exercise of discretion or judgment. See Noffke ex rel. Swenson v. Bakke , 2009 WI 10, ¶41, 315 Wis. 2d 350, 760 N.W.2d 156.
¶27 As the circuit court noted, all of Kerr's actions were discretionary actions performed in the exercise of her official capacity. "The test for determining whether a duty is discretionary ... or ministerial ... is that the latter is found 'only when [the duty] is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.' " Kimps v. Hill , 200 Wis. 2d 1, 10-11, 546 N.W.2d 151 (1996) (brackets in Kimps ; citation omitted). The acts of putting Towle on leave, keeping Towle on leave, investigating his job performance, alerting the BDEA, and helping Towle seek other employment are all actions that involved Kerr's exercise in judgment. It was within Kerr's discretion to determine what, if any, action would be taken against Towle, for how long, and whom to notify about her determinations. Accordingly, Kerr's actions are subject to immunity under WIS. STAT. § 893.80(4).
Violation of Due Process Under the Wisconsin Constitution
A. Property Interest
¶28 Towle argues that Kerr "[is] liable to Towle for depriving him of a property interest without due process in violation of the Wisconsin Constitution." Specifically, he contends that as a public employee, his contract provided him with a "right" to be employed as business manager and that his administrative leave violated his property interest in completing his contract. We disagree.
¶29 In order to demonstrate a right to procedural due process, a person must establish that a constitutionally protected property or liberty interest is implicated. See Board of Regents of State Colls. v. Roth , 408 U.S. 564, 569 (1972). Property interests are not created by the constitution, but are created and defined "by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. at 577. In order to "have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He [or she] must have more than a unilateral expectation of it." Id.
¶30 We conclude that the circuit court properly granted summary judgment on Towle's due process claim because Towle did not produce sufficient evidence to allow a fact-finder to conclude that he had been deprived of a constitutionally protected property interest. A constitutional property interest is defined as "a legitimate claim of entitlement." Id . Therefore, to demonstrate a constitutional "right" to perform his contractual job duties, Towle must point to more than his "unilateral expectation" and must show that an independent source, such as state law or his contract, created an "entitlement" to his job duties. See id. Towle has produced no evidence that he was entitled to act as business manager while on an administrative leave and while receiving his full salary. An investigation into his conduct as business manager was being conducted.
¶31 Towle has not identified any state law or contractual provision giving him the right to act as business manager while being investigated for official misconduct. Moreover, Towle continued to receive his salary and benefits while on leave. He suffered no economic damages during the duration of his contract with the District. In short, Towle received all the benefits of his contract. Towle's due process rights in a property interest were not violated.
B. Liberty Interest
¶32 Towle contends that his due process rights in a liberty interest were also violated because his "good name, reputation, honor or integrity was called into question by the conduct and statements of Defendants such that he has been effectively blacklisted from employment as a school administrator." Towle contends that Kerr's communication with the president of the BDEA, the subsequent email to the eleven BDEA members, and Kerr's statements to the media were "stigmatizing."
¶33 "A person's reputation falls within the scope of property or liberty interests protected by procedural due process because when 'a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him [or her],' due process is essential." Stipetich v. Grosshans , 2000 WI App 100, ¶24, 235 Wis. 2d 69, 612 N.W.2d 346 (brackets in Stipetich ; citation omitted). "However a person's reputation is protected by procedural due process only when damage to the reputation is accompanied by the alteration or elimination of a right or status previously recognized under state law." Id.
¶34 This issue was addressed by the federal district court, which found that Towle's due process rights were not implicated because Kerr's communication with the BDEA president and the subsequent email were not public disclosures and Kerr's statements to the media were sufficiently vague so as not to call Towle's reputation into question. Kerr argues that because this issue was addressed by the federal district court, the doctrine of claim preclusion bars Towle's liberty interest claim. We agree.
¶35 Whether claim preclusion applies to a certain set of facts presents a question of law that this court reviews independently. See Wisconsin Pub. Serv. Corp. v. Arby Const., Inc. , 2012 WI 87, ¶30, 342 Wis. 2d 544, 818 N.W.2d 863. In determining the claim-preclusive effect of the judgment of a federal district court located in Wisconsin, Wisconsin courts apply Wisconsin law of claim preclusion. Id. The doctrine of claim preclusion bars a party from bringing any claim that was the subject of a prior action when there is: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits in a court of competent jurisdiction." Wickenhauser v. Lehtinen , 2007 WI 82, ¶22, 302 Wis. 2d 41, 734 N.W.2d 855 (citations omitted).
¶36 Towle's federal court claim and his current state court claim arise out of the same set of facts, raise the same questions of law, and involve identical parties. The federal district court's finding that Towle's liberty claim failed as a matter of law is also a final judgment on the merits of that claim. See DePratt v. West Bend Mut. Ins. Co. , 113 Wis. 2d 306, 310-11, 334 N.W.2d 883 (1983) (a summary judgment is a final judgment on the merits). Accordingly, we conclude that Towle's claim as to his liberty interest is barred by the doctrine of claim preclusion.
Breach of the Implied Covenant of Good Faith and Fair Dealing in the Employment Contract
¶37 Finally, Towle contends that Kerr breached the implied covenant of good faith and fair dealing in his employment contract in a variety of ways.
¶38 "Every contract implies good faith and fair dealing between the parties to it, and a duty of cooperation on the part of both parties." Beidel v. Sideline Software, Inc. , 2013 WI 56, ¶27, 348 Wis. 2d 360, 842 N.W.2d 240 (citation omitted). "This duty exists in the performance of the contract." LDC-728 Milwaukee, LLC v. Raettig , 2006 WI App 258, ¶11, 297 Wis. 2d 794, 727 N.W.2d 82. The duty of good faith means that each party to a contract will not do something which will have the effect of injuring or destroying the rights or ability of the other party to receive the benefits of the contract. WIS JI-CIVIL 3044. We agree with the circuit court that the evidence in the record does not support any of Towle's good faith and fair dealing claims.
¶39 Kerr did not violate any provision of Towle's employment contract by placing him on administrative leave. Towle was placed on leave during an investigation of irregularities discovered with his job performance. None of Kerr's actions deprived Towle of any rights assured by the contract. Towle continued to receive the benefits of his contract and even received assistance from Kerr in attempting to secure other employment. While his job performance was investigated for substantial irregularities, Kerr still tried to assist Towle in obtaining other employment. Kerr informed only those officials who needed to know why the business manager was absent and only provided a minimal explanation for his absence. Kerr addressed the media only after public questions arose about Towle's performance and his leave. Again, Kerr provided a vague response to the media inquiries. No evidence in this record supports Towle's assertion of a violation of the implied covenant of good faith and fair dealing which attaches to every contract.
¶40 For the foregoing reasons, we affirm the circuit court.
By the Court. -Order affirmed.
Not recommended for publication in the official reports.

The parties stipulated the dismissal of the claims pertaining to the Memorandum of Understanding.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

As stated, we collectively refer to all of the defendants as "Kerr" unless otherwise noted.